ANN GERMAN, SHELTON R. WILLIAMS, LAWRENCE H. SVERDRUP, DONALD L. SHAFFER, C. E. CROCKER, J. F. FENNESSY, JR., DAVID W. HARMAN, WILLIAM T. DOUGLAS, THOMAS BOSTOCK AND SHAWN THOMPSON, PETITIONERS, v. THE JUDICIAL NOMINATION COMMISSION OF THE STATE OF MONTANA AND DAVID R. BILLINGTON, JOSEPH A. RENDERS, DARBY O'BRIEN, MRS. BERNICE KINGSBURY, JOSEPH R. MARRA, WILLIAM G. STERNHAGEN AND W. W. LESSLEY, THE MEMBERS THEREOF, RESPONDENTS.

No. 13881.
July 20, 1977.
566 P.2d 405.

ORDER

PER CURIAM:

IT IS ORDERED that the application for writ of supervisory control or other appropriate writ or remedy in the above captioned cause is hereby denied.

MR. JUSTICE HASWELL deems himself disqualified and did not participate in the decision.

MR. JUSTICE SHEA would grant the petition.

I would order an adversary hearing to inquire into the allegations made by petitioners.

I do not believe this Court has the power to determine whether the commission shall submit 3, 4 or 5 names to the Governor from which he must select the new judge. Neither does this Court have the power to determine who shall be submitted to theGovernor. However, this does not mean that the Commission can act however it sees fit—without regard to the law.

It is alleged that the Commission acted without setting up any rules of procedure for the conduct of its affairs. Section 93-709, R.C.M.1947, provides that the Commission must set up "rules for the conduct of its affairs and to provide for the confidentiality of its proceedings." Certainly the public, before the Commission acts, is entitled to know the rules under which it operates, and there is

strong reason to believe that the Commission has no written rules of operation and at best very informal rules of operation. While the public would never know (because of the confidentiality provisions of Section 93-709) whether the Commission had followed its own rules, still there would be some redeeming value in letting the public think that at least the rules look good on paper. In this situation, as far as the public is concerned, there are no rules at all. And where there are no rules the public certainly has reason to suspect that the Commission is not proceeding on a merit basis and that its selection process is seething with partisan and petty politics. The Commission should not be allowed to make judicial nominations until they adopt written rules of procedure and operation which are available to the public.

Another allegation is that the Commission jumped the gun by acting on the applications and sending the names of the nominees to the Governor before a vacancy even existed. The new judgeship officially came into existence on July 1, 1977. Up until this date there was no vacancy to fill because there simply was no office to fill. Yet the Commission submitted its list of nominees to the Governor before July 1. The selection process was open and shut before there was even a new judgeship in existence. Perhaps other lawyers planned on applying for the judgeship, thinking that they had until August 1, 1977 to apply, only to be abruptly informed that the Govenor already had the list of nominees.

While this Court has no right to control the outcome of who is nominated by the Commission, we do have an obligation to insist that the Commission follows the law—and here it is patently obvious that it has not. For example, one of the dangers of the Commission's not adopting rules defining the scope of confidentiality in its proceedings, is that the Commission can avoid accountability for the "real" reasons for its choices. By the Court's action denying even an adversary hearing, the Commission's action, no matter how arbitrary, will remain enshrouded in a veil of secrecy. Perhaps Section 93-717 calls for a veil of secrecy, and if that is so, the public is the loser.